IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JUSTIN NEILL                                                         PLAINTIFF

V.                                 CASE NO. 5:18-CV-05205

DR. ROBERTO SAEZ;
NURSE SHAWNA STEPHENS;
NURSE JESSIE PRINCE; and
NURSE FRAN INFANTE                                 DEFENDANTS

## MEMORANDUM OPINION AND ORDER

In this civil rights action filed pursuant to 42 U.S.C. § 1983, Plaintiff Justin Neill contends that his constitutional rights were violated while he was detained in the Benton County Detention Center ("BCDC"). Specifically, he maintains he was denied adequate medical care. He names Dr. Roberto Saez and Nurses Shawna Stephens, Jessie Prince, and Fran Infante as Defendants, suing them in their individual capacities only.

The case is now before the Court on Defendants' Motion for Summary Judgment (Doc. 22). Neill filed a response (Doc. 29) and two supplements to the Motion (Docs. 36 & 42). For the reasons set forth below, Defendants' Motion for Summary Judgment (Doc. 22) is **GRANTED**.

### I. BACKGROUND

According to Neill, he has Crohn's disease, and Defendants denied him both medical treatment for the disease and a special diet that was free from milk and meat.[1]

---

[1] Many of the medical records submitted in this case concern Neill's mental health issues. See Doc. 22-1. Since the care that he received for his mental health is not at issue in this case, no further mention of these records will be made in this Order.

1

Crohn's disease is a type of inflammatory bowel disease that can cause abdominal pain, severe diarrhea, fatigue, weight loss, and malnutrition. According to the Mayo Clinic, the inflammation of the digestive tract caused by Crohn's disease "often spreads deep into the layers of affected bowel tissue" and can "lead to life-threatening complications." *See* https://www.mayoclinic.org/diseasesconditions/crohns-disease/symptoms-causes/syc-20353304 (last accessed Jan. 22, 2020).

Defendants first argue on summary judgment that they requested, but were not provided with, medical records to verify Neill's claim that he had been diagnosed with Crohn's disease. Second, they argue that Neill did not appear to have symptoms of Crohn's disease when he was examined numerous times by jail medical staff, including Dr. Saez. Third, Defendants maintain that the medical staff responded to, assessed, and treated all of Neill's medical complaints, including his request for a special diet tray, which was only revoked after officers observed Neill trading food off his tray with other inmates.

The record reflects that Neill was arrested and booked into the BCDC on May 18, 2018. He remained incarcerated there until his transfer to the Arkansas Department of Correction ("ADC") on November 6, 2018. During his BCDC intake screening, Neill reported suffering from Crohn's disease but stated that he had not been taking his medication because he had no insurance. (Doc. 22-1 at 2). Neill was placed on suicide watch because he reported having slit his right wrist the month before. *Id.* at 5. He remained on suicide watch until May 25, 2018, at which time he was moved to general population. *Id.* at 16.

On June 5, 2018, Neill was seen by Dr. Saez. According to the jail's medical

2

chart, Neill told the doctor: "I have a lot of stomach issues and pain. I was told in Siloam Springs ER I had Crohns disease in my lungs. [T]his was over a year ago." (Doc. 22-1 at 52). Dr. Saez conducted a physical examination and noted that Neill's abdominal sounds were "regular," his abdomen was "soft, non tender non distended," and "no edema was present." *Id.* Dr. Saez also wrote in the file that he had received some laboratory results on Neill from "Siloam Springs labs," dated February 2018, which revealed that Neill's complete blood count (CBC) and comprehensive metabolic panel screen (CMP) were both "normal." *Id.*[2]

Neill was next seen by medical staff at the jail on July 14, 2018. On that date, Neill was asked to sign a medical records request. It appears from the notation in the file that medical staff were trying to confirm Neill's report of a prior "GI dxs [gastrointestinal diagnosis]." (Doc. 22-1 at 52). On July 16 and 17, the jail sent medical records requests to a number of providers, including Northwest Medical Center in Springdale, Ozarks Community Hospital, Wal-Mart Pharmacy, Mercy Hospital, and Siloam Springs Regional Hospital. *Id.* at 53–56. It appears the only record that was returned concerning Neill's gastrointestinal complaints was a report from the Siloam Springs Regional Hospital Emergency Department, dated January 23, 2018. (Doc. 22-2 at 1). According to this record, Neill visited the emergency room on one occasion, complaining of abdominal

---

[2] According to the Mayo Clinic, "there is no one test to diagnose Crohn's disease." https://www.mayoclinic.org/diseases-conditions/crohns-disease/diagnosis-treatment/drc-20353309 (last accessed Jan. 23, 2020). Usually a combination of tests, including blood tests to look for anemia or infection and procedures such as a colonoscopy or a computerized tomography (CT), are used. *Id.*

3

cramping. *Id.* He told hospital staff that his symptoms were aggravated by "food, movement, [and] pressure." *Id.* He also disclosed that he had a history of Crohn's disease. *Id.* at 1, 4. However, the record lists the reason for his visit as "constipation," and notes that Neill informed the staff that he was simply "requesting help to have a BM" because he "ha[d] not had a bowel movement in 2 days." *Id.* at 1.

On July 18, 2018, BCDC medical staff placed Neill on a lactose-free, vegetarian diet. (Doc. 22-1 at 17). The medical diet order was renewed on August 2 and on September 13. *Id.* at 18–20. However, on September 25, the medical diet was discontinued "per Lt. Holt," and Neill was instructed to return to a regular diet tray. *Id.* at 20. The reason for this decision was because jail staff had observed Neill "on camera" trading food from his tray with other inmates. *Id.* at 53.

On July 22, 2018, Neill reported to jail medical staff that he was suffering from bilateral knee pain with an onset date of two or three days before. *Id.* at 18. Neill was placed on Ibuprofen for seven days. *Id.* Neill also complained of nausea, diarrhea, and headaches at that time, but he refused medication for nausea and loose stools. *Id.*

On October 9, Neill complained of intermittent foot pain. *Id.* at 20. He was prescribed Ibuprofen for seven days and Colace.[3] *Id.* A few days later, on October 15, Neill complained of constipation and pain related to constipation. *Id.* at 21. He was prescribed Ibuprofen and docusate.[4] *Id.* Then, on October 24, Neill was seen by

---

[3] Colace is a brand name for a stool softener. https://medlineplus.gov/druginfo/meds/a601113.html (accessed Jan. 23, 2020).

[4] Docusate is another name for a stool softener. *Id.*

4

medical staff for complaints of "streaking blood" in his stool. *Id.* at 53. Neill also reported that he believed he was having "an upper abdominal bleed due to his Crohn's disease." *Id.* Nursing staff suggested to Neill that his symptoms were consistent with hemorrhoids; but Neill denied he had hemorrhoids and stated he "'knew" that the blood in his stool was related to Crohn's disease, claiming, "I'm well educated in this disease and know what I'm talking about.'" *Id.* Neill was sent back to his cell and advised to alert staff if he noticed increased blood in his stool. *Id.*

On October 26, 2018, Neill was brought to Dr. Saez for another medical examination. During that visit, Neill complained that he had Crohn's disease and was suffering pain in his testicles as a result. *Id.* at 23. Dr. Saez examined Neill's testicles and reported no evidence of swelling. *Id.* When Dr. Saez refused to send Neill to a specialist, Neill became angry and walked out. *Id.* A few days later, on October 29, Neill complained to the nursing staff that he was suffering from constipation. He was given milk of magnesia and instructed to increase his intake of water and fibrous foods. *Id.* at 21–22. This is the last substantive notation in the BCDC's medical file concerning Neill's gastrointestinal complaints. He was transferred to the ADC eight days later.

A final piece of evidence the Court has considered was a medical record provided by Neill in connection with his summary judgment response. The record is from Siloam Springs Regional Hospital, dated August 22, 2017. (Doc. 36). It does not appear to have been received by the BCDC, as it was not in the jail's medical file. The record indicates that Neill reported to Siloam Springs Regional Hospital complaining of abdominal pain, watery stools, a nonproductive cough, body aches, chills, and a fever. *Id.* at 1. Doctors

5

performed a urinalysis and detected blood in Neill's urine, so he was ordered to undergo an abdominal CT scan "to look for kidney stones." *Id.* at 2. The CT scan showed "mild wall thickening involving the terminal ileum," and the radiologist posited that this symptom "could be seen in Crohn's disease." *Id.* at 3. Neill was administered steroids and directed to follow up with his primary care provider for further evaluation and to confirm a diagnosis. *Id.* at 4. Neill's discharge paperwork lists an "[i]mpression" of "Crohn's disease [regional enteritis]," *id.*, but there is no evidence that a medical provider confirmed the Crohn's diagnosis after this hospital visit.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the

record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

#### A. Individual Liability of Defendants Stephens, Prince, and Infante

"Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed. Section 1983 does not sanction tort by association." *Heartland Acad. Cmty. Church v. Waddle*, 595 F.3d 798, 805-06 (8th Cir. 2010) (quotation marks and citation omitted). In this case, Neill has not pointed to any specific actions taken by Nurses Stephens, Prince, or Infante that deprived him of his federal constitutional rights. Neill does not contend that the nurses kept him from seeing Dr. Saez or that they had the authority to diagnose or treat him. Accordingly, these Defendants are entitled to summary judgment in their favor.

#### B. Individual Liability of Defendant Saez

#### 1. Evidence of an Objectively Serious Medical Need

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 103, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: '[Neill] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

7

For purposes of this motion, the Court concludes that Neill's combined complaints of abdominal pain, blood in his stool, nausea, constipation, and diarrhea constitute an objectively serious medical need.

### C. Deliberate Indifference

Neill first argues that Dr. Saez was deliberately indifferent to his medical needs because he failed to recognize that a diagnosis of Crohn's disease was listed in the January 23, 2018 medical record (Doc. 22-2 at 1–6) that the BCDC obtained from Siloam Springs Regional Hospital. Neill believes that this medical record definitively establishes that he was previously diagnosed with Crohn's disease. However, contrary to Neill's contention, this hospital record does not contain a diagnosis of Crohn's disease. Instead, it reflects that Neill informed hospital staff that he had "a history of Crohn's." *Id.* at 4. With respect to the 2017 Siloam Springs hospital record (Doc. 36) that contains at least a doctor's "impression" of Crohn's disease, there is no proof that Dr. Saez was made aware of this particular record or that he saw it and then deliberately disregarded it.

Neill's second argument on deliberate indifference is that he informed jail staff during intake that he had previously been seen by Dr. Stinnett at the Siloam Springs Regional Medical Department, but jail staff ignored this information, and in doing so, failed to confirm his Crohn's diagnosis.[5] Assuming Neill did mention Dr. Stinnett's name during

---

[5] No doctor by the name of "Dr. Stinnett" appears on the 2017 hospital record that contained a radiologist's "impression" of Crohn's disease. The radiologist listed on that record was Aaron M. Spann, M.D. The attending physician was Alan Henley, M.D. (Doc. 36). Similarly, the 2018 hospital record also did not list a Dr. Stinnett. The attending physician during the 2018 hospital visit was Diego S. Espinoza, M.D. (Doc. 22-2, p. 3).

8

intake, there is no indication that he ever mentioned it to the medical staff, including Dr. Saez. Further, Neill cannot reasonably dispute that the BCDC medical staff requested medical records from a number of providers, including Siloam Springs Regional Hospital. Finally, there is no genuine, material dispute of fact that Dr. Saez failed to treat Neill for the non-severe gastrointestinal symptoms he periodically presented, namely, constipation, abdominal pain, nausea, and a "streaking" of blood in his stool.

If the Court were to adopt Neill's arguments and find that Dr. Saez's treatment was so negligent that it rose to the level of medical malpractice, the law is clear that "[m]erely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference. An inmate must demonstrate that a prison doctor's actions were 'so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care.'" *Jackson v. Buckman*, 756 F.3d 1060, 1065-66 (8th Cir. 2014) (citations omitted). Here, viewing the entire record in the light most favorable to Neill, there is no genuine, material dispute of fact as to whether Dr. Saez intentionally mistreated Neill or refused to provide him with essential care. Accordingly, Neill has failed to establish a jury question on the issue of deliberate indifference.

## IV. CONCLUSION

For the reasons stated, Defendants' Motion for Summary Judgment (Doc. 22) is **GRANTED**, and the case is **DISMISSED WITH PREJUDICE**. A judgment in accordance with this Opinion and Order shall be entered this same day.

9

**IT IS SO ORDERED** on this 4th day of February, 2020.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE